**EXHIBIT A**

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
3/16/2022 5:09 PM
CLERK OF THE COURT
Catherine Chavez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT

REMOVAL SOLUTIONS, LLC
A New Mexico Limited Liability Company,

Plaintiff,

v.                                        Case No. ___D-202-CV-2022-01385___

ACUITY INSURANCE
A Wisconsin Mutual Insurance Company,

Defendant.

### COMPLAINT FOR BREACH OF THE DUTY OF GOOD FAITH, UNFAIR CLAIMS PRACTICES UNDER SECTION 59A-16-20, AND BREACH OF INSURANCE CONTRACT

For its Complaint against Defendant, Acuity Insurance, Plaintiff, Removal Solutions, LLC states:

1.    Plaintiff is a New Mexico limited liability company, duly registered and in good standing with the New Mexico Secretary of State.

2.    Upon information and belief, Defendant is a Wisconsin mutual insurance company.

3.    The incidents that form the basis of the claims in this case all took place within Bernalillo County, New Mexico.

4.    The court has subject matter jurisdiction over the claims set forth in this Complaint and personal jurisdiction over the parties.

5.    Venue is proper in this Court pursuant to Section 38-3-1 NMSA.

### FACTS APPLICABLE TO ALL COUNTS

6.    On October 14, 2020, Plaintiff's employee was driving a 2019 Dodge Ram pickup truck westbound on Interstate 40 near 98th Street in Albuquerque, New Mexico.

7.    Plaintiff had rented the pickup truck from Enterprise Rent-a-Car for use in its business.

8.    The pickup truck was towing a trailer.

9.    A large semi-truck which was traveling ahead of the pickup truck suddenly swerved to switch lanes, at which point, Plaintiff's employee observed a 2006 Buick sedan traveling in reverse in the right-hand lane of I-40 westbound.

10.    Plaintiff's employee swerved but was unable to avoid a collision with the Buick sedan being driven by Richard Quintana.

11.    As a result of the collision the pickup truck was damaged.

12.    The Bernalillo County Sheriff's Office accident report shows that Mr. Quintana was insured by Unique Insurance Company, Policy No. NMP3036866.

13.    Enterprise Rent-a-Car asserted a claim for the damage against Plaintiff in the amount of $12,748.00. This amount has since incurred additional charges.

14.    Plaintiff submitted the claim from Enterprise Rent-a-Car to Defendant, Acuity Insurance.

15.    On December 11, 2020, Defendant denied the claim on the grounds that there was no collision coverage under the policy for "hired and non-owned autos." *See* Exhibit 1.

16.    By letter dated September 9, 2021, Plaintiff's counsel contested the denial of coverage. *See* Exhibit 2.

17.    On November 11, 2021, Plaintiffs' counsel followed up his letter with an email to Defendant's adjuster requesting a response to his letter of September 9, 2021.

18.    On November 16, 2021, counsel for Defendant contacted Plaintiff's counsel by email stating that she was reviewing the matter and hoped to have a response later in the week. *See* Exhibit 3.

19.    On November 19, 2021, Defendant's counsel asked for additional information explaining Plaintiff's coverage position.

20.    Plaintiff's counsel provided a response to Defendant's counsel's request on December 20, 2021.

21.    On January 5, 2022, Plaintiff's counsel sent an email to Defendant's counsel following up on his letter of December 20, 2021.  In response, Defendant's counsel stated she would provide a response.

22.    On January 31, 2022, Defendant's counsel provided a response, once again denying coverage for the claim.  *See* Exhibit 4.

23.    A copy of the 40-page, Business Auto Coverage policy in effect at the time of the accident is attached as Exhibit 5.

24.    Section II of the Business Auto Coverage portion of the policy — Liability Coverage — provides:

> A. We will pay all sums an *insured* legally must pay as damages because of personal injury or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of covered *auto* . . . .
>
> 1. Who is an insured.
>
> The following are *insureds*:
>
> a.    You for any covered *auto*;
> b.    Anyone else while using with your permission a covered *auto* you own, hire, or borrow except . . . . [The exceptions listed in this portion of the policy do not apply to the facts in this case].

Exhibit 5, at 7.

25.    The coverage provision quoted above does not exclude collision damages or comprehensive damages to a rented vehicle.  Rather, it states Defendant "will pay all sums" that Plaintiff "legally must pay as damages because of property damage." *Id.*

3

26.     Section IV – Business Auto Conditions – paragraph B, General Conditions, subparagraph 5.b. of the policy provides:

> For Hired Auto Physical Damage Coverage, a covered auto you lease, hire, ***rent*** or borrow ***is deemed to be a covered auto you own.*** However, any auto that is leased, hired rented or borrowed with a driver is not a covered auto.

*Id.* at 13 (emphasis added).

27.     The Business Auto Renewal Declarations page states: "Item Four: HIRED AUTO COVERAGE" and lists the following coverages:

   a.     "Bodily Injury Liability" Limits/Deductible "$1,000,000 each person, $1,000,000 each accident" "Premium" of "$212"; and

   b.     "Coverage . . . Property Damage Liability" Limits/Deductible "$1,000,000 each accident" "Premium . . . Included."

*Id.* at 2.

28.     Item Five of the Declarations "Nonowned Auto Coverage" lists the same limits and deductibles for Bodily Injury Liability and Property Damage Liability. The Premium for Bodily Injury Liability under "Item Five" is "$153.00" and, once again, the "Premium" for "Property Damage Liability is listed as "Included." *Id.* at 3.

29.     Under the terms of the Policy, Plaintiff is covered for property damage caused by or related to its operation of the Dodge Ram pickup truck.

30.     Alternatively, the provisions of the Policy are ambiguous and designed to mislead a reasonable person, like Plaintiff, into believing that they are covered for bodily injury and property arising from the operation of a hired or non-owned vehicle.

31.     Defendant's counsel has admitted that property damage coverage for the accident exists but asserts that it is only available if and when Plaintiff is sued by Enterprise Rent-A-Car.

4

*See* Exhibit 4 at 5 ("For hired autos or non-owned autos, the declarations demonstrate that the Policy provides coverage only for bodily injury and property damage liability . . . . these liability coverages exist for the accident at issue but are not triggered by Enterprise's pre-litigation demand for payment regarding the property damage to the rented vehicle").

32.     Item 3 of the Declarations lists a 2017 Isuzu. This vehicle is owned by Plaintiff. Under the declarations for this vehicle both Comprehensive and Collision Coverage are listed, and premiums for these coverages were paid by Removal Solutions.

33.     This entry in the Declarations, when combined with Section IV – Business Auto Conditions – paragraph B, General Conditions, subparagraph 5.b (quoted in paragraph 26, *supra*) is designed to mislead reasonable persons, like Plaintiff, to believe that property damage caused by or related to the operation of rented or non-owned vehicle is covered.

34.     Defendant's counsel in her letter dated January 31, 2022, further states, in relevant part:

    a.     The "Commercial Auto Coverage Part of the Policy … did not provide collision or comprehensive coverage for hired or non-owned autos." Exhibit 4 at 1.

    b.     The declarations and Section I – Covered Autos make clear that the Policy "provides comprehensive and collision coverage only for 'specifically described autos.'" *Id.* at 4.

    c.     The property damage coverage for hired autos and non-owned autos exists "for the accident at issue but are not triggered by Enterprise's pre-litigation demand for payment regarding the property damage to the rented vehicle." *Id.* at 5.

    d.     "The Policy would also provide uninsured motorists coverage if Quintana's [the other, at fault driver] Unique Insurance policy limits were insufficient . . . . We have no information suggesting that Unique has denied coverage for this accident." *Id.* at 5.

    e.  "A pre-litigation demand such as that made by Enterprise for payment does not meet the definition of 'suit' under the Policy." Therefore, Defendant has no obligation at this time to pay the claim or to defend the Plaintiff. *Id.* at 6 – 7.

## COUNT I
## <u>BREACH OF THE DUTY OF GOOD FAITH</u>

  35.  As an insurer, Defendant has a common law duty of good faith to Plaintiff as the insured.

  36.  By its actions, Defendant has failed to balance its own interests and the interests of the Plaintiff, honestly and fairly by, among other things:

    a.  Failing to meet the reasonable expectations of Plaintiff, as the insured, by relying on a legalistic and technical application of certain terms in the 40-page policy as grounds for denying Plaintiff's claim;

    b.  Insisting that Plaintiff has to be sued before coverage under the property damage provisions for hired or non-owned vehicles is available;

    c.  Failing to determine whether Unique Insurance Company would accept responsibility for the claim;

    d.  Failing to inform Plaintiff that it did not determine whether Unique Insurance Company would pay the claim;

    e.  Failing to inform Plaintiff that it would have to contact Unique Insurance Company to pursue its claim on its own; and

    f.  Denying Plaintiff's claim for frivolous or unfounded reasons.

  37.  By preferring its interests over the Plaintiff's, Defendant has acted in bad faith, in breach of its duty of good faith.

  38.  Plaintiff has suffered damages as a result of Defendant's bad faith.

6

39.    Defendant's actions are willful and wanton, such that punitive damages should be assessed in an amount sufficient to deter Defendant and others similarly situated from such conduct in the future.

## COUNT II
## UNFAIR CLAIMS PRACTICES UNDER SECTION 59A-16-20 NMSA

40.    Section 59A-16-30 provides a private right to recover damages arising from any unfair claims practices as set forth in Section 59A-16-20.

41.    Section 59A-16-20C provides that "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies" is an unfair claims practice.

42.    Defendant has violated Section 59A-16-20C by, among other things:

a.    Insisting that Plaintiff has to be sued before coverage under the property damage provisions for hired or non-owned vehicles is available;

b.    Failing to determine whether Unique Insurance Company would accept responsibility for the claim;

c.    Failing to inform Plaintiff that it did not determine whether Unique Insurance Company would pay the claim;

d.    Failing to inform Plaintiff that it would have to contact Unique Insurance Company to pursue its claim on its own; and

e.    Denying Plaintiff's claim for frivolous or unfounded reasons.

43.    Section 59A-16-20E provides that "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear" is an unfair claims practice.

44.    Defendant has violated Section 59A-16-20E by, among other things:

a. Insisting that Plaintiff has to be sued before coverage under the property damage provisions for hired or non-owned vehicles is available;

b. Failing to determine whether Unique Insurance Company would accept responsibility for the claim;

c. Failing to inform Plaintiff that it did not determine whether Unique Insurance Company would pay the claim; and

d. Failing to inform Plaintiff that it would have to contact Unique Insurance Company to pursue its claim on its own.

e. Denying Plaintiff's claim for frivolous or unfounded reasons.

45. Section 59A-16-20G provides that "compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered" is an unfair claims practice.

46. Defendant has violated Section 59A-16-20G by denying coverage under the hired and non-owned auto provisions of the declarations and the Policy, which provide for such coverage, and compelling Plaintiff to institute this lawsuit.

47. Defendant has further violated Section 59A-16-20G by denying Plaintiff's claims for frivolous or unfounded reasons.

48. Defendant's actions are willful and wanton, such that punitive damages should be assessed in an amount sufficient to deter Defendant and others similarly situated from such conduct in the future.

## COUNT III
## BREACH OF INSURANCE CONTRACT

49. The Policy is a valid and binding contract between Plaintiff and Defendant.

8

50.     Defendant has materially breached the Policy by failing and refusing to pay Plaintiff's claim.

51.     Plaintiff has suffered damages as a result of Defendant's material breach of the Policy.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant and award:

A.     Compensatory damages in an amount to be proven at trial;

B.     Punitive damages;

B.     Pre- and Post-judgment interest on damages at the applicable statutory rates;

C.     Reasonable attorneys' fees incurred in bringing this action; and

D.     Such other and further relief as the Court deems just and proper.

LAW OFFICE OF ANGELO J. ARTUSO

_/s/ Angelo J. Artuso_
Angelo J. Artuso
P.O. Box 51763
Albuquerque, NM 87181-1763
(505) 306-5063
angelo@nmliberty.com

Attorney for Removal Solutions, LLC



December 11, 2020


REMOVAL SOLUTIONS LLC
4115 RANCHO ENCANTO RD NW
ALBUQUERQUE NM 87120


Claim Number:  RA3636
Date of Loss:  10/14/2020
Claimant Name:  RICHARD QUINTANA
Insured Name:  REMOVAL SOLUTIONS LLC

Dear Mr. Ritz:

This letter is in follow up to our recent phone conversation where we informed you we would be unable to assist you with the property damage to the rented 2019 Dodge Ram (VIN 3C6UR5DLXKG637525). It is our understanding that another vehicle reversed down the on ramp on the highway and collided with the rented vehicle.

As we discussed, your Commercial Auto Policy does not afford collision coverage for hired or non-owned autos. The auto policy carries liability coverage only.

**Business Auto Amended Declarations**
In return for the payment of the premium and subject to all
the terms of the policy, we agree to provide the insurance
coverage as stated in the policy.
CA-7000(9-18)                                                   09/14/20  Page 1 of 3

You can see there is no premium shown below for collision coverage on hired and non-owned autos; therefore, we are unable to assist you with repairs to your vehicle.

Item Four: HIRED AUTO COVERAGE

| Unit 0001 | Non Trucking Hired Auto Estimated Cost of Hire$^2$: $0 | | Class: 500000 State: NM Zip: 87120 |
|---|---|---|---|
| Coverage | Limits/Deductible | | Premium |
| Bodily Injury Liability | $1,000,000 each person $1,000,000 each accident | | $212.00 |
| Property Damage Liability | $1,000,000 each accident | | Included |

2800 South Taylor Drive · Sheboygan, WI 53081
800.242.7666 · 888.880.9588 FAX
acuity.com
Acuity, A Mutual Insurance Company

K-651(7-20)



EXHIBIT

1

| Coverage | Limits/Deductible | Premium |
|---|---|---|
| | Total Premium | $212.00 |

### Item Five: NONOWNED AUTO COVERAGE

| Unit 0002    Rating Basis: Number of Employees    Number: 1 | | Class: 600000 State: NM  Zip: 87120 |
|---|---|---|
| Coverage | Limits/Deductible | Premium |
| Bodily Injury Liability | $1,000,000 each person $1,000,000 each accident | $153.00 |
| Property Damage Liability | $1,000,000 each accident | Included |
| | Total Premium | $153.00 |

CA-7000(9-19)                                             09/14/20  Page 3 of 3

By asserting the reasons outlined above for denying coverage on this claim, Acuity, A Mutual Insurance Company does not waive the right to apply any other policy provisions as a means for future defense or evaluation.

Please be advised that our position is based upon the information that was developed through the course of our investigation. If you feel additional information is available that could affect our position, please provide that information and we will gladly review such information and re-evaluate our coverage position.

Sincerely,

*Rachel Vreeke*

Rachel Vreeke
Claims Representative
rvreeke@acuity.com

cc:  7913 Hub International Services Inc

*Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.*

Angelo J. Artuso
Attorney
P.O. Box 51763
Albuquerque, NM 87181-1763
(505) 306-5063
angelo@nmliberty.com

September 9, 2021

VIA EMAIL To rvreeke@acuity.com

Rachel Vreeke
Claims Representative
Acuity Insurance
2800 South Taylor Drive
Sheboygan, WI 53091

Re:     **Claim No. RA3636**
        Date of Loss: 10/14/2020
        Insured: Removal Solutions, LLC

Dear Ms. Vreeke:

I have reviewed your letter dated December 11, 2020, denying coverage for Removal Solution, LLC's claim for the accident that occurred on October 14, 2020. Removal Solutions believes your determination of "no coverage" is in error and asks that you please reconsider.

Under New Mexico law, "[w]hen the language in an insurance policy is susceptible of more than one meaning, it is ambiguous and must be construed in favor of the insured." *Federal Ins. Co. v. Century Fed. S&L Assoc.*, 114 N.M. 162, 824 P.2d, 302 (1992). In this instance, there are provisions of the policy that would lead an insured like Removal Solutions to conclude that it has coverage for the damage arising from the accident on October 14, 2020.

For example, the Business Auto Coverage portion of the policy, Section II – Liability Coverage - provides:

> A. We will pay all sums an *insured* legally must pay as damages because of *personal injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of covered *auto* . . . .
>
> 1. The following are *insureds*:
>
>    a.    You for any covered *auto*;
>    b.    Anyone else while using with your permission a covered *auto* you own, hire, or borrow except:

**EXHIBIT**

2

Ms. Rachel Vreeke
Acuity Insurance
September 7, 2021

[None of the listed exceptions apply to this accident].

In this instance, Removal Solutions rented the vehicle from Enterprise. The accident caused damage to the Enterprise vehicle. The accident resulted from Removal Solutions' use of the vehicle.

You will note that the coverage provision quoted above does not exclude collision damages or comprehensive damages to a rented vehicle. Rather, it states you "will pay all sums" that Removal Solutions "legally must pay as damages because of property damage."

Under a plain reading of the coverage provision, an insured, like Removal Solutions would conclude that it had coverage for the accident on October 14, 2020.

Similarly, Section IV — Business Auto Conditions – paragraph B, General Conditions, subparagraph 5.b. provides:

> For Hired Auto Physical Damage Coverage, a covered auto you lease, hire, *rent* or borrow *is deemed to be a covered auto you own*. However, any auto that is leased, hired rented or borrowed with a drier is not a covered auto.

In the Business Auto Renewal Declarations, it lists several categories of vehicles including a 2017 Isuzu. This is a vehicle owned by Removal Solutions. Under the declarations for this vehicle both Comprehensive and Collision Coverage are listed, and premiums for these coverages were paid by Removal Solutions.

Your denial of coverage relies on the assertion that under the Non-Trucking Hired Autos section of the Declarations page, there is no premium listed for collision coverage. "You can see there is no premium shown below for collision coverage on hired and non-owned autos, therefore we are unable to assist you with repairs to your vehicle."

The statement in Section IV.B.5.b quoted above, however, is in direct conflict with your assertion. By this statement, Removal Solutions is led to believe that any rented vehicle will be treated just like an owned vehicle, which would include both comprehensive and collision coverage.

In sum, the policy is ambiguous, and under well-settled New Mexico law, such ambiguities must be construed in favor of coverage.

Please note that the foregoing analysis is not intended to be a complete review of conflicting and ambiguous provisions in the policy. Therefore, should this matter become subject to additional legal proceedings, Removal Solutions reserves the right to rely upon and cite to additional policy language that either provides coverage or is ambiguous.

Ms. Rachel Vreeke
Acuity Insurance
September 7, 2021

Based on the foregoing information, Removal Solutions asks that Acuity provide coverage for the accident and fully pay the claim asserted by Enterprise for the damage to its vehicle.

Thank you for your consideration and I look forward to hearing from you.

Sincerely,

Angelo J. Artuso



**From:** Sonya R. Burke srbu@modrall.com
**Subject:** RA3636 - Coverage Review
**Date:** November 16, 2021 at 1:46 PM
**To:** angelo@nmliberty.com
**Cc:** Jennifer A. Noya jnoya@modrall.com, LeAnn Gallegos leanng@modrall.com

EXTERNAL EMAIL: Please do not click any links or open any attachments unless you trust the sender and are expecting this message and know the content is safe.

Angelo,

Hope all is well with you.  We have been reviewing this coverage matter and hope to get you a response this week.  Please feel free to give me a call if you have any questions.

Thank you,



Sonya R. Burke
Modrall Sperling I www.modrall.com
P.O. Box 2168 I Albuquerque, NM 87103-2168
500 4th St. NW, Ste. 1000 I Albuquerque, NM 87102
D: 505.848.1802I O: 505.848.1800

EXHIBIT

3



MODRALL SPERLING

L A W Y E R S

Sonya R. Burke
Tel: 505.848.1802
Fax: 505.449.2002
sonya.burke@modrall.com

January 31, 2022

*Via Email Only*

Angelo J. Artuso
PO Box 51763
Albuquerque, NM 87181-1763
angelo@nmliberty.com

Re:     Claim No. RA3636
        Date of Loss: 10/14/2020
        Insured: Removal Solutions, LLC

Dear Angelo:

        Please allow this letter to serve as Acuity's response to your correspondence of December 20, 2021. As set forth fully herein, the Commercial Auto Coverage Part of the Policy, Policy No. ZB0824 ("the Policy") did not provide collision or comprehensive coverage for hired or non-owned autos. The Policy provided bodily injury and property damage liability coverages, in addition to uninsured motorists coverage. Enterprise's demand for payment does not trigger the coverages available under the Policy.

        The factual background of this accident is as follows, as documented in the police report regarding the incident. The police report describes the accident as having taken place on October 14, 2020 on Interstate 40 Westbound, west of 98th Street. *See* Police Report. The report notes that Richard Quintana was reversing in the westbound lanes of traffic on the freeway. *Id.* Sergio Alvarez-Aguirre, driving a vehicle rented by Enterprise, was traveling westbound in the furthest right-hand lane of traffic when a semi-truck in front of him swerved suddenly, apparently avoiding Quintana's vehicle. *Id.* Once the semi-truck switched lanes, Alvarez-Aguirre saw Quintana's vehicle reversing in his direction and he was unable to avoid the collision. *Id.* The report notes that Quintana contributed to the accident, while Alvarez-Aguirre did not. *Id.* The report documents that Quintana was insured by Unique, Policy No. NMP3036866.

        According to Enterprise documentation, "RemovalSolutions, DustinRitz" rented the Enterprise vehicle with a Visa credit card on September 29, 2020. It is worth noting that many credit card agreements provide coverage for rental vehicles, so you may wish to inquire with Visa as to whether the company provided coverage for this accident if you have not already done so.

Modrall Sperling
Roehl Harris & Sisk P.A.

500 Fourth Street NW
Suite 1000
Albuquerque,
New Mexico 87102

PO Box 2168
Albuquerque,
New Mexico 87103-2168

Tel: 505.848.1800
www.modrall.com

**EXHIBIT**

4

January 31, 2022
Angelo J. Artuso
Page 2

It is our understanding that Enterprise has demanded that Removal Solutions pay for the damage to the vehicle. We are aware that Enterprise has sent letters demanding payment, but it is our understanding that no lawsuit has been filed against Removal Solutions. If that is not the case, please forward any Complaint as soon as possible. Or, if suit has not been filed but is ultimately filed against Removal Solutions, please provide timely notice of that lawsuit.

The Business Auto Amended Declarations set forth the schedule of coverages and covered autos:

Item Two: SCHEDULE OF COVERAGES AND COVERED AUTOS

Each of these coverages apply only to those autos shown as covered autos by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage

| Coverages | Covered Auto Symbols | Limit of Insurance | Premium |
|---|---|---|---|
| Bodily Injury Liability | 7, 8, 9, 19 | $1,000,000 each person  $1,000,000 each accident | $3,396.00 |
| Property Damage Liability | 7, 8, 9, 19 | $1,000,000 each accident | Included |
| Auto Medical Payments | 7 | $5,000 each person | $28.00 |
| Uninsured Motorists Bodily Injury Property Damage | 2, 8, 9 | $1,000,000 each person  $1,000,000 each accident $1,000,000 minus $250 deductible each accident each accident | |
| Comprehensive | 7 | Actual cash value, cost of repair or stated amount (if any), whichever is less, minus the deductible shown in Item(s) Three for each covered auto | $668.00 |
| Collision | 7 | Actual cash value, cost of repair or stated amount (if any), whichever is less, minus the deductible shown in Item(s) Three for each covered auto | $668.00 |

Policy at Declarations, 1 of 3. The "covered auto symbols" are defined as follows:

January 31, 2022
Angelo J. Artuso
Page 3

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the autos that are covered autos for each of your coverages. The following numerical symbols describe the autos that may be covered autos. The symbols entered next to a coverage on the Declarations designate the only autos that are covered autos.

### A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS

SYMBOL   DESCRIPTION

**1** =   ANY AUTO

**2** =   OWNED AUTOS ONLY. Only those autos you own (and for Liability Coverage any trailers you do not own while attached to power units you own). This includes those autos you acquire ownership of after the policy begins.

**3** =   OWNED PRIVATE PASSENGER AUTOS ONLY. Only the private passenger autos you own. This includes those private passenger autos you acquire ownership of after the policy begins.

**4** =   OWNED AUTOS OTHER THAN PRIVATE PASSENGER AUTOS ONLY. Only those autos you own that are not of the private passenger type (and for Liability Coverage any trailers you do not own while attached to power units you own). This includes those autos not of the private passenger type you acquire ownership of after the policy begins.

**5** =   OWNED AUTOS SUBJECT TO NO-FAULT. Only those autos you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those autos you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged.

**6** =   OWNED AUTOS SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those autos you own that because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those autos you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7** =   SPECIFICALLY DESCRIBED AUTOS. Only those autos described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any trailers you do not own while attached to any power unit described in Item Three).

**8** =   HIRED AUTOS ONLY. Only those autos you lease, hire, rent or borrow. This does not include any auto you lease, hire, rent or borrow from any of your employees or partners or members of their households.

**9** =   NONOWNED AUTOS ONLY. Only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

Policy, Business Auto Coverage Form, at 2 of 13.

The Policy goes on to list the coverage forms and endorsements, as well as the coverage and premium details:

January 31, 2022
Angelo J. Artuso
Page 4

COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART

| Form Number | Form Title | Premium |
|---|---|---|
| CA-0001P(8-19) | Business Auto Coverage Form | |
| CA-0138F(12-01) | New Mexico Changes | |
| CA-0350F(1-15) | New Mexico Changes - Cancellation and Nonrenewal | |
| CA-2167F(12-93) | Split Uninsured Motorists Coverage Limits | |
| CA-2348FF(11-16) | Public or Livery Passenger Conveyance and On-Demand Delivery Services Exclusion | |
| CA-2364F(10-13) | Exclusion of Terrorism | |
| CA-3139R(11-11) | New Mexico Uninsured Motorists Coverage - Nonstacked | $236.60 |
| CA-7027(12-93) | Loss Payable Clause | |
| CA-7178(12-93) | Split Limits of Insurance - Business Auto, Motor Carrier and Truckers | |
| CA-7214(10-88) | Additional - Auto Status When Required in a Written Agreement With You - Primary | |
| CA-7248(11-15) | ACUITY Advantages - Business Auto | |
| CA-9903F(3-06) | Auto Medical Payments Coverage | |
| IL-0017F(11-98) | Common Policy Conditions | |
| IL-0021F(9-14) | Nuclear Energy Liability Exclusion - Broad Form | |
| IL-0175F(9-07) | New Mexico Changes - Property Claims Settlement in the Event of a Catastrophe | |
| IL-7012(9-14) | Asbestos Exclusion | |

Item Three. SCHEDULE OF COVERAGES AND PREMIUM DETAIL

**Unit 0003    2017 ISUZU NPR HD**
**VIN: 54DC4W1B9HS806158**

Class: 23153
State: NM Zip: 87126

| Coverage | Limits/Deductible | Premium |
|---|---|---|
| Bodily Injury Liability | $1,000,000 each person $1,000,000 each accident | $3,601.00 |
| Property Damage Liability | $1,000,000 each accident | Included |
| Auto Medical Payments | $5,000 each person | $28.00 |
| Comprehensive | Actual cash value minus $1,000 deductible | $585.00 |
| Collision | Actual cash value minus $1,000 deductible | $589.00 |
| | Total Premium | $4,793.00 |

Item Four: HIRED AUTO COVERAGE

**Unit 0001    Non Trucking Hired Auto**
**Estimated Cost of Hire¹: $0**

Class: 500099
State: NM Zip: 87128

| Coverage | Limits/Deductible | Premium |
|---|---|---|
| Bodily Injury Liability | $1,000,000 each person $1,000,000 each accident | $212.00 |
| Property Damage Liability | $1,000,000 each accident | Included |

Item Five: NONOWNED AUTO COVERAGE

**Unit 0002    Rating Basis: Number of Employees    Number: 1**

Class: 500000
State: NM Zip: 87120

| Coverage | Limits/Deductible | Premium |
|---|---|---|
| Bodily Injury Liability | $1,000,000 each person $1,000,000 each accident | $103.00 |
| Property Damage Liability | $1,000,000 each accident | Included |

Policy, Declarations at 2-3 of 3.

In short, as it makes clear in the declarations and Section I — Covered Autos, the Policy provides comprensive and collision coverage only for "specifically described autos." Policy, Business Auto Coverage Form at 2 of 13. This is clearly reiterated in Item Three of the Schedule of Coverages, which indicates that

January 31, 2022
Angelo J. Artuso
Page 5

comprehensive and collision coverage are provided only for the 2017 Isuzu NPR HD, VIN 54DC4W1B9HS806158.   The Policy does not provide comprehensive or collision coverage for hired autos or nonowned autos.  *Id.* For hired autos or non-owned autos, the declarations demonstrate that the Policy provides coverage only for bodily injury liability and property damage liability.  Policy, Declarations at 2-3 of 3. As is discussed in more detail herein, these liability coverages exist for the accident at issue, but are not triggered by Enterprise's pre-litigation demand for payment regarding the property damage to the rented vehicle.

The Policy would also provide uninsured motorists coverage if Quintana's Unique Insurance policy limits were insufficient.  However, because the damages claimed by Enterprise total $12,748.00, even if Quintana maintained minimum limits as required by law, Unique's Policy should provide sufficient coverage so as not to implicate the uninsured motorists coverage of the Acuity Policy.  We have no information suggesting that Unique has denied coverage for this accident.  If that has changed, or if you have any additional information that you think is relevant to that inquiry, please do not hesitate to forward any additional information regarding Unique's Policy to us.

You have argued that Enterprise's request for payment implicates the property damage liability coverage for hired or non-owned autos under the Acuity Policy.  This misapprehends the nature of the liability coverages at issue.  As set forth in the Policy, Section II – Liability Coverage provides the following coverage:

### A. COVERAGE

We will pay all sums an *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a *covered auto*.

We will also pay all sums an *insured* legally must pay as a *covered pollution cost or expense* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of covered autos. However, we will only pay for the *covered pollution cost or expense* if there is either *bodily injury* or *property damage* to which this insurance applies that is caused by the same *accident*.

We have the right and duty to defend any *insured* against a *suit* asking for such damages or a *covered pollution cost or expense*. However, we have no duty to defend any *insured* against a *suit* seeking damages for *bodily injury* or *property damage* or a *covered pollution cost or expense* to which this insurance does not apply. We may investigate and settle any claim or *suit* as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

Policy, Business Auto Coverage Form at 3 of 13.  New Mexico law is well established that when an insurance contract is unambiguous, that language should be construed in its usual and ordinary sense.  *See, e.g., Security Mutual Casualty Co. v. O'Brien*, 99

January 31, 2022
Angelo J. Artuso
Page 6

N.M. 638, 641, 662 P.2d 639, 642 (1983) (unambiguous policies that do not contravene public policy must be enforced as written); *Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989) (upholding clear anti-stacking provisions). In other words, New Mexico courts may not strain to locate ambiguities where none exist, so as to find coverage; nor may the courts violate the plain language of insurance policies by interpreting them to provide coverage where it was not intended. See, e.g. *Gamboa v. Allstate Insurance Co.*, 104 N.M. 756, 759, 726 P.2d 1386, 1389 (1986). Under the plain and unambiguous policy, Acuity has no obligation to defend against a pre-litigation demand such as the one made by Enterprise because the duty to defend under the policy extends only to "suits" which are defined as "civil proceedings" as follows:

> **N.** *"Suit"* means a civil proceeding in which:
>
> > 1. Damages because of *bodily injury* or *property damage;* or
> >
> > 2. A covered pollution cost or expense;
> >
> > to which this insurance applies are alleged.
> >
> > Suit includes:
> >
> > 1. An arbitration proceeding in which such damages or covered pollution costs or expenses are claimed and to which the *insured* must submit or does submit with our consent; or
> >
> > 2. Any other alternative dispute resolution proceeding in which such damages or covered pollution costs or expenses are claimed and to which the *insured* submits with our consent.

Policy, Business Auto Coverage Form at 13 of 13.  A pre-litigation demand such as that made by Enterprise for payment does not meet the definition of a "suit" under the Policy. *Aztec Abstract & Title Ins., Inc. v. Maxum Spec. Grp.*, 302 F.Supp.3d 1274, 1280-81 (D.N.M. 2018) ("New Mexico caselaw indicates that a lawsuit must be filed in a court before a duty to defend arises"); *see also* 7A Couch on Ins. § 103:15 ("A mere threatened action, accusation of misconduct, or notice of intention to hold insured responsible for a wrongful act does not constitute a 'claim'"); *Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 2015 U.S. Dist. Lexis 72466 (S. D. Fla. 2015) (insurer had no obligation to defend because there was not a civil proceeding which requires "a forum and some sort of decision maker involved"); *The Cincinnati Ins. Co. v. Amsco Windows*, 593 Fed. App'x 802 (10th Cir. 2014) (Nevada's pre-suit procedure for a property owner to assert a claim for construction defects against a contractor was not a "suit" for purposes of a general liability insurance policy containing similar language); *Meyers Warehouse, Inc. v. Canal Indemnity Co.*, 614 Fed. Appx 719 (5th Cir. 2015) (insurer did not have a duty to defend insured during settlement negotiations because policy did not purport to impose a duty on insurer to defend in the event of a claim but rather civil proceeding required) (unpublished); *Recall Total Information Management, Inc. v. Federal Ins. Com.*, 83 A.3d 664, 671 (Conn. App. 2014) (duty to defend not triggered because to construe "suit" to include mere negotiations following a demand, would obliterate the distinction between "suit" and "claim."). New Mexico cases addressing the duty to

January 31, 2022
Angelo J. Artuso
Page 7

defend have all involved circumstances in which a complaint has been filed. *Lopez v. Board of Educ. Of West Las Vegas Sch. Dist.*, 1994-NMSC-017, ¶8 ("Whether an insurer has a duty to defend is determined by comparing the factual allegations of the complaint with the insurance policy."); *Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo*, 1992-NMSC-065 ("An insurer's duty to defend arises out of the nature of the allegations of the complaint."); *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 618, 642 P.2d 604, 605 (1982) (stating that "[i]f the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured."); *Garcia v. Underwriters at Lloyd's London*, 2007-NMCA-042, 156 P.3d 712 (duty to defend is triggered by actual notice of the suit). Accordingly, Enterprise's pre-litigation demand for payment does not implicate the liability coverage of the Policy.

The liability coverage of the Policy is not implicated for another reason, which is that Removal Solutions is not legally responsible for the property damage, as required to implicate the liability coverage of the Policy. The duty to defend under the liability coverage of the Acuity Policy requires that a civil proceeding seek damages that "an insured legally must pay as damages." Policy, Business Auto Coverage Form at 3 of 13. "In order to be actionable under a liability policy, the damages suffered must be proximately caused by the insured's negligence." 14 Couch on Ins. § 200:1. As set forth in the police report, Quintana was responsible for the accident and the attendant damages to the Enterprise vehicle. Because Removal Solutions is not legally responsible for the accident or damages, there is no basis for the argument that Removal Solutions "legally must pay" damages arising out of the accident as required to implicate the liability coverage of the Policy.

If Removal Solutions argues that Removal Solution's alleged liability sounds in contract, rather than tort, the Policy's liability coverage also would not be implicated. The liability coverage excludes liability assumed "under any contract or agreement," unless it is an *insured contract* as defined by the Policy. Policy, Business Auto Coverage Form at 4 of 13. The Policy defines "*insured contract*" in relevant part as follows:

> **H.** *"Insured contract"* means:
>
> . . .
>
> 6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your *employees*, of any *auto*. However, such contract or agreement shall not be considered an *insured contract* to the extent that it obligates you or any of your *employees* to pay for *property damage* to any *auto* rented or leased by you or any of your *employees*.

Policy, Business Auto Coverage Form at 12 of 13. It is my understanding that the documentation related to any rental agreement is limited to the one-page rental invoice which does not appear to satisfy the definition of an "*insured contract*." However, if any further documentation exists by which Removal Solutions purportedly assumed liability for property damage to the vehicle, that also would not constitute an "*insured contract*" under the Policy such that liability coverage was implicated.

January 31, 2022
Angelo J. Artuso
Page 8

Read as a whole, it is significant that the liability coverage of the policy requires that the insured "legally must pay" for damages, while the comprehensive and collision coverages have no such requirement:

### SECTION III - PHYSICAL DAMAGE COVERAGE

#### A. COVERAGE

1. We will pay for *loss* to a covered *auto* or its equipment under:

##### a. Comprehensive Coverage

From any cause except:

(1) The covered *auto's* collision with another object; or

(2) The covered *auto's* overturn.

. . .

##### c. Collision Coverage

Caused by:

(1) The covered *auto's* collision with another object; or

(2) The covered *auto's* overturn.

Policy, Business Auto Coverage Form at 6-7 of 13. As discussed above, the comprehensive and collision coverages apply only to "specifically described autos" and were unavailable for the hired, non-owned vehicle at issue in this accident.

You have argued that the Policy language is ambiguous because the liability coverage of the Policy defines a covered *auto* to include temporary substitute autos:

#### C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered *autos* for Liability Coverage:

1. *Trailers* with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. *Mobile equipment* while being carried or towed by a covered *auto.*

3. Any *auto* you do not own while used with the permission of its owner as a temporary substitute for a covered *auto* you own that is out of service because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. *Loss;* or

e. Destruction.

Policy, Business Auto Coverage Form at 3 of 13. This section clearly applies only to "Liability Coverage," and thus creates no ambiguity with respect to the comprehensive or collision coverages that do not apply to hired or non-owned autos. The same analysis set forth above with respect to why liability coverage is not implicated

January 31, 2022
Angelo J. Artuso
Page 9

applies, regardless of whether the Enterprise vehicle was a temporary substitute or a hired or non-owned auto. However, you also have not provided any information that would suggest this was a "temporary substitute for a covered auto." If you have any such documentation, please forward the same to us for our review.

You have argued that the temporary substitute language cited above creates ambiguity as to the comprehensive coverage applies to non-owned autos because the Policy refers in several places to "covered *autos*." This language is not ambiguous, because the Policy explicitly states that a "covered *auto*" for one coverage may not be a "covered *auto*" for another coverage:

> Item Two of the Declarations shows the *autos* that are covered *autos* for each of your coverages. The following numerical symbols describe the *autos* that may be covered *autos*. The symbols entered next to a coverage on the Declarations designate the only *autos* that are covered *autos*.

Policy, Business Auto Coverage Form at 2 of 13.

In sum, the Policy does not provide comprehensive or collision coverage for hired or non-owned autos. For hired or non-owned autos, the Policy would provide property damage liability, bodily injury liability, and uninsured motorist coverages. However, those coverages are not implicated by Enterprise's pre-litigation settlement demand. If you believe any of the above misinterprets the facts as they are known to you, or if you believe any documentation would assist us in evaluating this demand, please do not hesitate to forward the same to us for our further consideration.

Sincerely,

Sonya R. Burke

SRBU
*W4310592.DOCX*



COMMERCIAL AUTO
COVERAGE PART

## Business Auto Renewal Declarations

Item One

First Named Insured and Address:

REMOVAL SOLUTIONS LLC
4115 RANCHO ENCANTO RD NW
ALBUQUERQUE NM 87120

Agency Name and Number:

HUB INTERNATIONAL SERVICES INC
7913-EM

| | |
|---|---|
| Policy Number: | ZB0824 |
| Policy Period: | Effective Date:   08-31-20 |
| | Expiration Date:   08-31-21 |

In return for the payment of the premium and subject to all
the terms of the policy, we agree to provide the insurance
coverage as stated in the policy.

12:01 A.M. standard time at your
mailing address shown in the
declarations

Item Two: SCHEDULE OF COVERAGES AND COVERED AUTOS

Each of these coverages apply only to those *autos* shown as covered *autos* by the entry of one or more of the
symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Auto Symbols | Limit of Insurance | Premium |
|---|---|---|---|
| Bodily Injury Liability | 7, 8, 9, 19 | $1,000,000 each person  $1,000,000 each *accident* | $3,396.00 |
| Property Damage Liability | 7, 8, 9, 19 | $1,000,000 each *accident* | Included |
| Auto Medical Payments | 7 | $5,000 each person | $28.00 |
| Uninsured Motorists    Bodily Injury    Property Damage | 2, 8, 9 | $1,000,000 each person  $1,000,000 each *accident*  $1,000,000 minus $250 deductible each *insured* each *accident* | |
| Comprehensive | 7 | Actual cash value, cost of repair or stated amount (if any), whichever is less, minus the deductible shown in Item(s) Three for each covered *auto* | $686.00 |
| Collision | 7 | Actual cash value, cost of repair or stated amount (if any), whichever is less, minus the deductible shown in Item(s) Three for each covered *auto* | $958.00 |

Estimated Schedule Premium                                                    $5,068.00

PREMIUM SUMMARY

| | |
|---|---|
| Estimated Schedule Premium | $5,068.00 |
| Estimated Endorsement Premium | $236.00 |
| Estimated Advance Premium | $5,304.00 |

**EXHIBIT**

**5**

Policy Number: ZB0824                    Effective Date: 08-31-20

## COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART

| Form Number | Form Title | Premium |
|---|---|---|
| CA-0001F(8-19) | Business Auto Coverage Form | |
| CA-0139F(12-01) | New Mexico Changes | |
| CA-0250F(5-15) | New Mexico Changes - Cancellation and Nonrenewal | |
| CA-2107F(12-93) | Split Uninsured Motorists Coverage Limits | |
| CA-2345F(11-16) | Public or Livery Passenger Conveyance and On-Demand Delivery Services Exclusion | |
| CA-2384F(10-13) | Exclusion of Terrorism | |
| CA-3129R(11-11) | New Mexico Uninsured Motorists Coverage - Nonstacked | $236.00 |
| CA-7027(12-93) | Loss Payable Clause | |
| CA-7176(12-93) | Split Limits of Insurance - Business Auto, Motor Carrier and Truckers | |
| CA-7214(10-98) | Add'l Insd - Auto Status When Required in a Written Agreement With You - Primary | |
| CA-7246(11-15) | ACUITY Advantages - Business Auto | |
| CA-9903F(3-06) | Auto Medical Payments Coverage | |
| IL-0017F(11-98) | Common Policy Conditions | |
| IL-0021F(3-14) | Nuclear Energy Liability Exclusion - Broad Form | |
| IL-0178F(9-07) | New Mexico Changes - Property Claims Settlement in the Event of a Catastrophe | |
| IL-7012(3-14) | Asbestos Exclusion | |
| | Estimated Endorsement Premium | $236.00 |

## Item Three: SCHEDULE OF COVERAGES AND PREMIUM DETAIL

| Unit 0003    2017 ISUZU NPR HD<br>VIN: 54DC4W1B9HS806158 | | Class: 23153<br>State: NM  Zip: 87120 |
|---|---|---|
| Coverage | Limits/Deductible | Premium |
| Bodily Injury Liability | $1,000,000 each person $1,000,000 each *accident* | $3,031.00 |
| Property Damage Liability | $1,000,000 each *accident* | Included |
| Auto Medical Payments | $5,000 each person | $28.00 |
| Comprehensive | Actual cash value minus $1,000 deductible | $686.00 |
| Collision | Actual cash value minus $1,000 deductible | $958.00 |
| | Total Premium | $4,703.00 |

## Item Four: HIRED AUTO COVERAGE

| Unit 0001    Non Trucking Hired Auto<br>Estimated Cost of Hire$^2$: $0 | | Class: 500000<br>State: NM  Zip: 87120 |
|---|---|---|
| Coverage | Limits/Deductible | Premium |
| Bodily Injury Liability | $1,000,000 each person $1,000,000 each *accident* | $212.00 |
| Property Damage Liability | $1,000,000 each *accident* | Included |

Policy Number:  ZB0824          Effective Date:  08-31-20

| Coverage | Limits/Deductible | Premium |
|---|---|---|
| | Total Premium | $212.00 |

Item Five: NONOWNED AUTO COVERAGE

| Unit 0002 | Rating Basis: Number of Employees   Number: 1 | Class: 600000 State: NM  Zip: 87120 |
|---|---|---|

| Coverage | Limits/Deductible | Premium |
|---|---|---|
| Bodily Injury Liability | $1,000,000 each person $1,000,000 each *accident* | $153.00 |
| Property Damage Liability | $1,000,000 each *accident* | Included |
| | Total Premium | $153.00 |

² Cost of hire means the total amount you incur for the hire of *autos* you do not own (not including *autos* you borrow or rent from your partners or *employees* or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

ADDITIONAL NAMED INSUREDS

   WHO IS AN INSURED includes the following Additional Named Insureds:

   NONE

FIRST NAMED INSURED IS:

   LTD LIAB COMPANY (LLC)

## BUSINESS AUTO COVERAGE FORM

### Index of Policy Provisions

Page

SECTION I - COVERED AUTOS................................2
  Description Of Covered Auto ...........................2
  Designation Symbols
  Owned Autos You Acquire After the ................3
  Policy Begins
  Certain Trailers, Mobile Equipment And ...........3
  Temporary Substitute Autos

SECTION II - LIABILITY COVERAGE.......................3
  Coverage..........................................................3
  Exclusions........................................................4
  Limit of Insurance............................................6

Page

SECTION III - PHYSICAL DAMAGE ........................6
COVERAGE
  Coverage..........................................................6
  Exclusions........................................................7
  Limit of Insurance............................................8
  Deductible.........................................................8

SECTION IV - BUSINESS AUTO .............................8
CONDITIONS
  Loss Conditions...............................................8
  General Conditions...........................................9

SECTION V - DEFINITIONS....................................11

## BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in italics have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the *autos* that are covered *autos* for each of your coverages. The following numerical symbols describe the *autos* that may be covered *autos*. The symbols entered next to a coverage on the Declarations designate the only *autos* that are covered *autos*.

A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS

SYMBOL    DESCRIPTION

1 =    ANY *AUTO*.

2 =    OWNED *AUTOS* ONLY. Only those *autos* you own (and for Liability Coverage any *trailers* you do not own while attached to power units you own). This includes those *autos* you acquire ownership of after the policy begins.

3 =    OWNED PRIVATE PASSENGER *AUTOS* ONLY. Only the private passenger *autos* you own. This includes those private passenger *autos* you acquire ownership of after the policy begins.

4 =    OWNED *AUTOS* OTHER THAN PRIVATE PASSENGER *AUTOS* ONLY. Only those *autos* you own that are not of the private passenger type (and for Liability Coverage any *trailers* you do not own while attached to power units you own). This includes those *autos* not of the private passenger type you acquire ownership of after the policy begins.

5 =    OWNED *AUTOS* SUBJECT TO NO-FAULT. Only those *autos* you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those *autos* you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged.

6 =    OWNED *AUTOS* SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those *autos* you own that because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those *autos* you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

7 =    SPECIFICALLY DESCRIBED *AUTOS*. Only those *autos* described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any *trailers* you do not own while attached to any power unit described in Item Three).

8 =    HIRED *AUTOS* ONLY. Only those *autos* you lease, hire, rent or borrow. This does not include any *auto* you lease, hire, rent or borrow from any of your *employees* or partners or members of their households.

9 =    NONOWNED *AUTOS* ONLY. Only those *autos* you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes *autos* owned by your *employees*, partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

19 ≕ MOBILE EQUIPMENT SUBJECT TO COMPULSORY OR FINANCIAL RESPONSIBILITY OR OTHER MOTOR VEHICLE INSURANCE LAW ONLY. Only those *autos* that are land vehicles and that would qualify under the definition of *mobile equipment* under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged.

B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS

1. If symbols 1, 2, 3, 4, 5, 6 or 19 are entered next to a coverage in Item Two of the Declarations, then you have coverage for *autos* that you acquire of the type described for the remainder of the policy period.

2. But, if symbol 7 is entered next to a coverage in Item Two of the Declarations, an *auto* you acquire will be a covered *auto* for that coverage only if:

   a. We already cover all *autos* that you own for that coverage or it replaces an *auto* you previously owned that had that coverage; and

b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered *autos* for Liability Coverage:

1. *Trailers* with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. *Mobile equipment* while being carried or towed by a covered *auto*.

3. Any *auto* you do not own while used with the permission of its owner as a temporary substitute for a covered *auto* you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. *Loss;* or

   e. Destruction.

## SECTION II - LIABILITY COVERAGE

A. COVERAGE

We will pay all sums an *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto*.

We will also pay all sums an *insured* legally must pay as a *covered pollution cost or expense* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of covered *autos*. However, we will only pay for the *covered pollution cost or expense* if there is either *bodily injury* or *property damage* to which this insurance applies that is caused by the same *accident*.

We have the right and duty to defend any *insured* against a *suit* asking for such damages or a *covered pollution cost or expense*. However, we have no duty to defend any *insured* against a *suit* seeking damages for *bodily injury* or *property damage* or a *covered pollution cost or expense* to which this insurance does not apply. We may investigate and settle any claim or *suit* as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. Who Is an Insured

The following are *insureds:*

a. You for any covered *auto*.

b. Anyone else while using with your permission a covered *auto* you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered *auto*. This exception does not apply if the covered *auto* is a *trailer* connected to a covered *auto* you own.

   (2) Your *employee* if the covered *auto* is owned by that *employee* or a member of his or her household.

   (3) Someone using a covered *auto* while he or she is working in a business of selling, servicing, repairing, parking or storing *autos* unless that business is yours.

   (4) Anyone other than your *employees*, partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their *employees*, while moving property to or from a covered *auto*.



(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered *auto* owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an *insured* described above but only to the extent of that liability.

2. Coverage Extensions

a. Supplementary Payments

We will pay for the *insured*:

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an *accident* we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any *suit* against the *insured* we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the *insured* at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the *insured* in any *suit* against the *insured* we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the *insured*.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any *suit* against the *insured* we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

b. Out of State Coverage Extensions

While a covered *auto* is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limit or limits specified by a compulsory or financial responsibility law in the jurisdiction where the covered *auto* is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out of state vehicles by the jurisdiction where the covered *auto* is being used.

We will not pay anyone more than once for the same elements of *loss* because of these extensions.

B. EXCLUSIONS

This insurance does not apply to any of the following:

1. Expected or Intended Injury

*Bodily injury* or *property damage* expected or intended from the standpoint of the *insured*.

2. Contractual

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an *insured contract*, provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement; or

b. That the *insured* would have in the absence of the contract or agreement.

3. Workers' Compensation

Any obligation for which the *insured* or the *insured's* insurer may be held liable under any workers' compensation law, disability benefits law or unemployment compensation law or any similar law.

4. Employee Indemnification and Employer's Liability

*Bodily injury* to:

a. An *employee* of the *insured* arising out of and in the course of:

(1) Employment by the *insured*; or

(2) Performing duties related to the conduct of the *insured's* business; or

b. The spouse, child, parent, brother or sister of that *employee* as a consequence of paragraph a. above.

This exclusion applies:

a. Whether the *insured* may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.



But this exclusion does not apply to *bodily injury* to domestic *employees* not entitled to workers' compensation benefits or to liability assumed by the *insured* under an *insured contract*. For the purposes of the coverage form, a domestic *employee* is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. Fellow Employee

   *Bodily injury* to:

   a. Any fellow *employee* of the *insured* arising out of and in the course of the fellow *employee's* employment or while performing duties related to the conduct of your business; or

   b. The spouse, child, parent, brother or sister of that fellow *employee* as a consequence of paragraph a above.

6. Care, Custody or Control

   *Property damage* to or *covered pollution cost or expense* involving property owned or transported by the *insured* or in the *insured's* care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. Handling of Property

   *Bodily injury* or *property damage* resulting from the handling of property:

   a. Before it is moved from the place where it is accepted by the *insured* for movement into or onto the covered *auto;* or

   b. After it is moved from the covered *auto* to the place where it is finally delivered by the *insured.*

8. Movement of Property by Mechanical Device

   *Bodily injury* or *property damage* resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered *auto.*

9. Operations

   *Bodily injury* or *property damage* arising out of the operation of:

   a. Any equipment listed in paragraphs 6b and 6c of the definition of *mobile equipment;* or

b. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of *mobile equipment* if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

10. Completed Operations

    *Bodily injury* or *property damage* arising out of your work after that work has been completed or abandoned.

    In this exclusion, your work means:

    a. Work or operations performed by you or on your behalf; and

    b. Materials, parts or equipment furnished in connection with such work or operations.

    Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a or b above.

    Your work will be deemed completed at the earliest of the following times:

    a. When all of the work called for in your contract has been completed;

    b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

    c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. Pollution

    *Bodily injury* or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants:*

    a. That are, or that are contained in any property that is:

       (1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered *auto;*

       (2) Otherwise in the course of transit by or on behalf of the *insured;* or

       (3) Being stored, disposed of, treated or processed in or upon the covered *auto.*



b. Before the *pollutants* or any property in which the *pollutants* are contained are moved from the place where they are accepted by the *insured* for movement into or onto the covered *auto*; or

c. After the *pollutants* or any property in which the *pollutants* are contained are moved from the covered *auto* to the place where they are finally delivered, disposed of or abandoned by the *insured*.

Paragraph a above does not apply to fuels, lubricants, fluids, exhaust gases or other similar *pollutants* that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered *auto* or its parts, if:

(1) The *pollutants* escape, seep, migrate, or are discharged, dispersed or released directly from an *auto* part designed by its manufacturer to hold, store, receive or dispose of such *pollutants*; and

(2) The *bodily injury, property damage* or *covered pollution cost or expense* does not arise out of the operation of any equipment listed in paragraphs 6b and 6c of the definition of *mobile equipment.*

Paragraphs b and c above of this exclusion do not apply to *accidents* that occur away from premises owned by or rented to an *insured* with respect to *pollutants* not in or upon a covered *auto* if:

(1) The *pollutants* or any property in which the *pollutants* are contained are upset, overturned or damaged as a result of the maintenance or use of a covered *auto*; and

(2) The discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused directly by such upset, overturn or damage.

12. War

*Bodily injury* or *property damage* arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

13. Racing

Covered *autos* while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered *auto* is being prepared for such a contest or activity.

C. LIMIT OF INSURANCE

Regardless of the number of covered *autos, insureds,* premiums paid, claims made or vehicles involved in the *accident,* the most we will pay for the total of all damages and *covered pollution cost or expense* combined resulting from any one *accident* is the Limit of Insurance for Liability Coverage shown in the Declarations.

All *bodily injury, property damage* and *covered pollution cost or expense* resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one *accident.*

No one will be entitled to receive duplicate payments for the same elements of *loss* under this coverage form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III - PHYSICAL DAMAGE COVERAGE

A. COVERAGE

1. We will pay for *loss* to a covered *auto* or its equipment under:

a. Comprehensive Coverage

From any cause except:

(1) The covered *auto's* collision with another object; or

(2) The covered *auto's* overturn.

b. Specified Causes of Loss Coverage

Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or



(6) The sinking, burning, collision or derailment of any conveyance transporting the covered *auto*.

c. Collision Coverage

Caused by:

(1) The covered *auto's* collision with another object; or

(2) The covered *auto's* overturn.

2. Towing

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered *auto* of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. Glass Breakage – Hitting a Bird or Animal – Falling Objects or Missiles

If you carry Comprehensive Coverage for the damaged covered *auto*, we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. *Loss* caused by hitting a bird or animal; and

c. *Loss* caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered *auto's* collision or overturn considered a *loss* under Collision Coverage.

4. Coverage Extensions

a. Transportation Expenses

We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered *auto* of the private passenger type. We will pay only for those covered *autos* for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered *auto* is returned to use or we pay for its *loss*.

b. Loss of Use Expenses

For Hired Auto Physical Damage, we will pay expenses for which an *insured* becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered *auto*;

(2) Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered *auto*; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered *auto*.

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

B. EXCLUSIONS

1. We will not pay for *loss* caused by or resulting from any of the following. Such *loss* is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the *loss*.

a. Nuclear Hazard

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

b. War or Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for *loss* to any covered *auto* while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for *loss* to any covered *auto* while that covered *auto* is being prepared for such a contest or activity.

3. We will not pay for *loss* due and confined to:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such *loss* resulting from the total theft of a covered *auto*.

4. We will not pay for *loss* to any of the following:

   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   d. Any accessories used with the electronic equipment described in paragraph c above.

5. Exclusions 4c and 4d do not apply to equipment designed to be operated solely by use of the power from the *auto's* electrical system that, at the time of *loss*, is:

   a. Permanently installed in or upon the covered *auto*;

   b. Removable from a housing unit which is permanently installed in or upon the covered *auto*;

   c. An integral part of the same unit housing any electronic equipment described in paragraphs a and b above; or

   d. Necessary for the normal operation of the covered *auto* or the monitoring of the covered *auto's* operating system.

6. We will not pay for *loss* to a covered *auto* due to *diminution in value*.

C. LIMIT OF INSURANCE

1. The most we will pay for *loss* to any one covered *auto* is the lesser of:

   a. The actual cash value of the damaged or stolen property as of the time of the *loss*; or

   b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. The most we will pay for all electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one *loss* is $1,000, if, at the time of *loss*, such electronic equipment is:

   a. Permanently installed in or upon the covered *auto* in a housing, opening or other location that is not normally used by the *auto* manufacturer for the installation of such equipment;

   b. Removable from a permanently installed housing unit as described in paragraph 2a above; or

   c. An integral part of such equipment as described in paragraphs 2a and 2b above.

3. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total *loss*.

4. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

D. DEDUCTIBLE

For each covered *auto*, our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to *loss* caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

A. LOSS CONDITIONS

1. Appraisal for Physical Damage Loss

If you and we disagree on the amount of *loss*, either may demand an appraisal of the *loss*. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of *loss*. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. Duties in the Event of Accident, Claim, Suit or Loss

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of *accident*, claim, *suit* or *loss*, you must give us or our authorized representative prompt notice of the *accident* or *loss*. Include:

(1) How, when and where the *accident* or *loss* occurred;

(2) The *insured's* name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved *insured* must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the *insured's* own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or *suit*.

(3) Cooperate with us in the investigation or settlement of the claim or defense against the *suit*.

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is *loss* to a covered *auto* or its equipment, you must also do the following:

(1) Promptly notify the police if the covered *auto* or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered *auto* from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered *auto* and records proving the *loss* before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. Legal Action Against Us

No one may bring a legal action against us under this coverage form until:

a. There has been full compliance with all the terms of this coverage form; and

b. Under Liability coverage, we agree in writing that the *insured* has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the *insured's* liability.

4. Loss Payment - Physical Damage Coverages

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property at our expense. We will pay for any damage that results to the *auto* from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the *loss*, our payment will include the applicable sales tax for the damaged or stolen property.

5. Transfer of Rights of Recovery Against Others to Us

If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after *accident* or *loss* to impair them.

B. GENERAL CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the *insured* or the *insured's* estate will not relieve us of any obligations under this coverage form.

2. Concealment, Misrepresentation or Fraud

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other *insured*, at any time, intentionally conceals or misrepresents a material fact concerning:

a. This coverage form;

b. The covered *auto*;

c. Your interest in the covered *auto*; or

d. A claim under this coverage form.

3.  Liberalization

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4.  No Benefit to Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

5.  Other Insurance

a.  For any covered *auto* you own, this coverage form provides primary insurance. For any covered *auto* you do not own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered *auto* which is a *trailer* is connected to another vehicle, the Liability Coverage this coverage form provides for the *trailer* is:

(1) Excess while it is connected to a motor vehicle you do not own; or

(2) Primary while it is connected to a covered *auto* you own.

b.  For Hired Auto Physical Damage Coverage, any covered *auto* you lease, hire, rent or borrow is deemed to be a covered *auto* you own. However, any *auto* that is leased, hired, rented or borrowed with a driver is not a covered *auto*.

c.  Regardless of the provisions of paragraph a above, this coverage form's Liability Coverage is primary for any liability assumed under an *insured contract*.

d.  When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

6.  Premium Audit

a.  The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the First Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the First Named Insured will get a refund.

b.  If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7.  Policy Period, Coverage Territory

a.  Under this coverage form, we cover *accidents* and *losses* occurring:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory.

b.  The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if a covered *auto* of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the *insured's* responsibility to pay damages is determined in a *suit* on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

c.  We also cover *loss* to, or *accidents* involving, a covered *auto* while being transported between any of these places.

CA-0001F(8-19)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 10 of 13

13

8. **Two or More Coverage Forms or Policies Issued by Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same *accident*, the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

## SECTION V - DEFINITIONS

A. *"Accident"* includes continuous or repeated exposure to the same conditions resulting in *bodily injury* or *property damage.*

B. *"Auto"* means:

1. A land motor vehicle, *trailer* or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, *auto* does not include *mobile equipment.*

C. *"Bodily injury"* means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

D. *"Covered pollution cost or expense"* means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *pollutants*; or

2. Any claim or *suit* by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of *pollutants.*

*Covered pollution cost or expense* does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants:*

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered *auto;*

(2) Otherwise in the course of transit by or on behalf of the *insured;* or

(3) Being stored, disposed of, treated or processed in or upon the covered *auto;*

b. Before the *pollutants* or any property in which the *pollutants* are contained are moved from the place where they are accepted by the *insured* for movement into or onto the covered *auto;* or

c. After the *pollutants* or any property in which the *pollutants* are contained are moved from the covered *auto* to the place where they finally are delivered, disposed of or abandoned by the *insured.*

Paragraph a above does not apply to fuels, lubricants, fluids, exhaust gases or other similar *pollutants* that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered *auto* or its parts, if:

(1) The *pollutants* escape, seep, migrate, or are discharged, dispersed or released directly from an *auto* part designed by its manufacturer to hold, store, receive or dispose of such *pollutants;* and

(2) The *bodily injury, property damage* or *covered pollution cost or expense* does not arise out of the operation of any equipment listed in paragraphs 6b or 6c of the definition of *mobile equipment.*

Paragraphs b and c above do not apply to *accidents* that occur away from premises owned by or rented to an *insured* with respect to *pollutants* not in or upon a covered *auto* if:

(1) The *pollutants* or any property in which the *pollutants* are contained are upset, overturned or damaged as a result of the maintenance or use of a covered *auto;* and

(2) The discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused directly by such upset, overturn or damage.

E. *"Diminution in value"* means the actual or perceived loss in market value or resale value which results from a direct or accidental *loss.*

F. *"Employee"* includes a *leased worker. Employee* does not include a *temporary worker.*

G. *"Insured"* means any person or organization qualifying as an *insured* in the Who Is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each *insured* who is seeking coverage or against whom a claim or *suit* is brought.

H. *"Insured contract"* means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for *bodily injury* or *property damage* to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your *employees,* of any *auto.* However, such contract or agreement shall not be considered an *insured contract* to the extent that it obligates you or any of your *employees* to pay for *property damage* to any *auto* rented or leased by you or any of your *employees.*

An *insured contract* does not include that part of any contract or agreement:

1. That indemnifies a railroad for *bodily injury* or *property damage* arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

2. That pertains to the loan, lease or rental of an *auto* to you or any of your *employees,* if the *auto* is loaned, leased or rented with a driver; or

3. That holds a person or organization engaged in the business of transporting property by *auto* for hire harmless for your use of a covered *auto* over a route or territory that person or organization is authorized to serve by public authority.

I. *"Leased worker"* means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. *Leased worker* does not include a *temporary worker.*

J. *"Loss"* means direct and accidental loss or damage.

K. *"Mobile equipment"* means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler-treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not *mobile equipment* but will be considered *autos:*

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning.

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, *mobile equipment* does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered *autos*.

L. *"Pollutants"* means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. *"Property damage"* means damage to or loss of use of tangible property.

N. *"Suit"* means a civil proceeding in which:

1. Damages because of *bodily injury* or *property damage;* or

2. A *covered pollution cost or expense;*

to which this insurance applies are alleged.

Suit includes:

1. An arbitration proceeding in which such damages or *covered pollution costs or expenses* are claimed and to which the *insured* must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages or *covered pollution costs or expenses* are claimed and to which the *insured* submits with our consent.

O. *"Temporary worker"* means a person who is furnished to you to substitute for a permanent *employee* on leave or to meet seasonal or short-term workload conditions.

P. *"Trailer"* includes semitrailer.



NEW MEXICO CHANGES

CA-0139F(12-01)

For a covered *auto* licensed or principally garaged in, or *garage operations* conducted in, New Mexico, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A.  Changes In Liability

1.  The Care, Custody Or Control Exclusion contained in the Business Auto, Motor Carrier and Truckers Coverage Forms is replaced by the following:

    *Property damage* to or *covered pollution cost or expense* involving property owned or transported by the *insured* or in the *insured's* care, custody or control. But this exclusion does not apply to:

    a.  Liability assumed under a sidetrack agreement; or

    b.  *Property damage* to or *covered pollution cost or expense* involving a motor vehicle you do not own if it is loaned:

        (1)  Without a fee to the *insured* by a licensed automobile dealer for demonstration purposes, as a temporary substitute vehicle for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle; or

        (2)  With a fee to the *insured* by a licensed automobile dealer or with or without a fee by anyone else for demonstration purposes, as a temporary substitute vehicle for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle and the vehicle is provided under a written statement, signed by the *insured*, which contains the following language:

        PRIMARY    LIABILITY    ASSIGNMENT

        In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

2.  The Care, Custody Or Control Exclusion contained in the Garage Coverage Form is replaced by the following:

    *Property damage* to or *covered pollution cost or expense* involving:

    a.  Property owned, rented or occupied by the *insured;*

    b.  Property loaned to the *insured;*

    c.  Property held for sale or being transported by the *insured;* or

    d.  Property in the *insured's* care, custody or control.

    But this exclusion does not apply to:

    a.  Liability assumed under a sidetrack agreement; or

    b.  *Property damage* to or *covered pollution cost or expense* involving a motor vehicle you do not own if it is loaned:

        (1)  Without a fee to the *insured* by a licensed automobile dealer for demonstration purposes, as a temporary substitute vehicle for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle; or

        (2)  With a fee to the *insured* by a licensed automobile dealer or with or without a fee by anyone else for demonstration purposes, as a temporary substitute vehicle for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle and the vehicle is provided under a written statement, signed by the *insured*, which contains the following language:

        PRIMARY    LIABILITY    ASSIGNMENT

        In consideration of the vehicle owner entrusting the motor vehicle elsewhere described to me, I agree that my vehicle insurance or self-insurance coverage shall be primarily responsible for any loss or damage caused by or to the motor vehicle.

B.  Changes In Conditions

1.  The following is added to the Other Insurance Condition in the Business Auto and Garage Coverage Forms and the Other Insurance -- Primary And Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms:

When this Coverage Form and any other coverage form or policy providing liability coverage applies to an *auto* and:

a. One coverage form or policy provides coverage to a Named Insured who is a licensed automobile dealer, and

b. The other coverage form or policy provides coverage to a person who is not engaged in that business, and

a person described in Paragraph b is operating an *auto* owned by the business described in Paragraph a which was loaned without a fee to that person for demonstration purposes, as a temporary substitute for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle, then the liability insurance provided by that person's coverage form or policy is primary and the liability insurance provided by the coverage form or policy issued to a business described in Paragraph a is excess.

2. General Conditions Paragraph 5b of the Business Auto and Garage Coverage Forms, Paragraph 3d of the Truckers Coverage Form and Paragraph 5f of the Motor Carrier Coverage Form do not apply to a covered *auto* that has been provided under a written Primary Liability Assignment contained in Subsection C of Section 23, Chapter 59A, Article 32 NMSA, which has been signed by an *insured*.

C. Changes In Definitions

The definition of *insured contract* is revised to include a written Primary Liability Assignment contained in Subsection C of Section 23, Chapter 59A, Article 32 NMSA where a motor vehicle is loaned with a fee to the *insured* by a licensed automobile dealer, or with or without a fee by anyone else, for demonstration purposes, as a temporary substitute for that person's vehicle while it is being serviced or repaired, or as a promotional courtesy vehicle or courtesy vehicle, and that vehicle is provided under the Primary Liability Assignment signed by the *insured*.

NEW MEXICO CHANGES - CANCELLATION AND NONRENEWAL                 CA-0250F(5-15)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The Cancellation Common Policy Condition does not apply. The following Condition applies instead:

CANCELLATION

1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. If this policy has been in effect less than 60 days and is not a renewal or continuation policy we issued, we may cancel for any reason, by mailing or delivering written notice of cancellation to the First Named Insured at least 10 days before the effective date of cancellation, provided that the cancellation becomes effective before the policy has been in effect for 60 days.

3. If paragraph 2 does not apply, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium. If we cancel for this reason, we will mail or deliver to the First Named Insured at least 10 days' notice.

   b. There has been a substantial change in the risk assumed by us since the policy was issued. If we cancel for this reason, we will mail or deliver to the First Named Insured at least 30 days' notice.

   c. The policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us. If we cancel for this reason, we will mail or deliver to the First Named Insured at least 15 days' notice.

   d. Willful and negligent acts or omissions by the *insured* have substantially increased the hazards insured against. If we cancel for this reason, we will mail or deliver to the First Named Insured at least 15 days' notice.

   e. Revocation or suspension of your driver's license or that of another operator who either resides in the same household or customarily operates the *auto*. If we cancel for this reason, we will mail or deliver to the First Named Insured at least 15 days' notice.

   f. You presented a claim based on fraud or material misrepresentation. If we cancel for this reason, we will mail or deliver to the First Named Insured at least 15 days' notice.

   The written notice of cancellation will state the reason for cancellation, except that such statement may be omitted from a notice mailed to an additional insured or lienholder under this policy.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

B. The following Condition is added:

NONRENEWAL

1. If we decide not to renew or continue this Coverage Part, we will mail to the First Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

2. If we offer to renew or continue and you do not accept, this Coverage Part will end on the expiration date of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

3. If we fail to mail proper notice of nonrenewal and you obtain other insurance, this Coverage Part will end on the effective date of that insurance.

C. Mailing Of Notices

We will mail or deliver our notice of cancellation or nonrenewal to the First Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

SPLIT UNINSURED MOTORISTS COVERAGE LIMITS

CA-2107F(12-93)

This endorsement modifies insurance provided under the following:

UNINSURED MOTORISTS COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

Paragraph 1 of Limit of Insurance is replaced by the following:

1. Regardless of the number of covered *autos*, *insureds*, premiums paid, claims made or vehicles involved in the *accident*, the limit of insurance is as follows:

   a. The most we will pay for all damages resulting from *bodily injury* to any one person caused by any one *accident*, including all damages claimed by any person or organization for care, loss of services or death resulting from the *bodily injury*, is the limit of *Bodily Injury* shown in the Declarations for each person.

   b. Subject to the limit for each person, the most we will pay for all damages resulting from *bodily injury* caused by any one *accident* is the limit of *Bodily Injury* shown in the Declarations for each *accident*.

   c. If coverage for *property damage* is provided by this insurance, the most we will pay for all damages resulting from *property damage* caused by any one *accident* is the limit of *Property Damage* shown in the Declarations for each *accident*.



PUBLIC OR LIVERY PASSENGER CONVEYANCE AND
ON-DEMAND DELIVERY SERVICES EXCLUSION

CA-2345F(11-16)

This endorsement modifies insurance provided under
the following:

BUSINESS AUTO COVERAGE FORM

GARAGE COVERAGE FORM

MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorse-
ment, the provisions of the Coverage Form apply
unless modified by the endorsement.

A. Changes In Liability Coverage

The following exclusion is added:

Public Or Livery Passenger Conveyance
And On-demand Delivery Services

This insurance does not apply to any covered
*auto* while being used:

1. As a public or livery conveyance for pas-
   sengers. This includes, but is not limited to,
   any period of time a covered *auto* is being
   used by an *insured* who is logged into a
   *transportation network platform* as a driver,
   whether or not a passenger is *occupying*
   the covered *auto*; or

2. By an *insured* who is logged into a *trans-
   portation network platform* or *delivery net-
   work platform* as a driver to provide *delivery
   services*, whether or not the goods, items or
   products to be delivered are in the covered
   *auto*.

B. Changes In Physical Damage Coverage

The following exclusion is added:

We will not pay for *loss* to any covered *autos*
while being used:

1. As a public or livery conveyance for pas-
   sengers. This includes, but is not limited to,
   any period of time a covered *auto* is being
   used by an *insured* who is logged into a
   *transportation network platform* as a driver,
   whether or not a passenger is *occupying*
   the covered *auto*; or

2. By an *insured* who is logged into a *trans-
   portation network platform* or *delivery net-
   work platform* as a driver to provide *delivery
   services*, whether or not the goods, items or
   products to be delivered are in the covered
   *auto*.

C. Changes In Auto Medical Payments

If Auto Medical Payments Coverage is at-
tached, then the following exclusion is added:

Public Or Livery Passenger Conveyance and
On-demand Delivery Services

This insurance does not apply to:

*Bodily injury* sustained by an *insured occupying*
a covered *auto* while it is being used:

1. As a public or livery conveyance for pas-
   sengers. This includes, but is not limited to,
   any period of time a covered *auto* is being
   used by an *insured* who is logged into a
   *transportation network platform* as a driver,
   whether or not a passenger is *occupying*
   the covered *auto*; or

2. By an *insured* who is logged into a *trans-
   portation network platform* or *delivery net-
   work platform* as a driver to provide *delivery
   services*, whether or not the goods, items or
   products to be delivered are in the covered
   *auto*.

D. Changes In Uninsured And/Or Underinsured
   Motorists Coverage

1. If Uninsured and/or Underinsured Motorists
   Coverage is attached, and:

   a. Contains, in whole or in part, a public or
      livery exclusion, then the following exclu-
      sion in Paragraph 2 does not apply.

   b. Does not contain a public or livery ex-
      clusion, then the following exclusion in
      Paragraph 2 is added.

2. Public Or Livery Passenger Conveyance
   And On-demand Delivery Services

   This insurance does not apply to any cov-
   ered *auto* while being used:

   a. As a public or livery conveyance for
      passengers. This includes, but is not
      limited to, any period of time a covered
      *auto* is being used by an *insured* who
      is logged into a *transportation network
      platform* as a driver, whether or not a
      passenger is *occupying* the covered
      *auto*; or

   b. By an *insured* who is logged into a
      *transportation network platform* or *deliv-
      ery network platform* as a driver to pro-
      vide *delivery services*, whether or not
      the goods, items or products to be de-
      livered are in the covered *auto*.

E. Changes In Personal Injury Protection Cov-
   erage

1. If Personal Injury Protection, no-fault or oth-
   er similar coverage is attached, and:

   a. Contains, in whole or in part, a public
      or livery exclusion, then the following
      exclusion in Paragraph 2 does not ap-
      ply.

   b. Does not contain a public or livery ex-
      clusion, then the following exclusion in
      Paragraph 2 is added.

2. Public Or Livery Passenger Conveyance
   And On-demand Delivery Services

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

21

This insurance does not apply to any covered *auto* while being used:

a.  As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered *auto* is being used by an *insured* who is logged into a *transportation network platform* as a driver, whether or not a passenger is *occupying* the covered *auto*; or

b.  By an *insured* who is logged into a *transportation network platform* or *delivery network platform* as a driver to provide *delivery services*, whether or not the goods, items or products to be delivered are in the covered *auto*.

F.  Additional Definitions

As used in this endorsement:

1.  *"Delivery network platform"* means an on-line-enabled application or digital network, used to connect customers:

a.  With drivers; or

b.  With local vendors using drivers;

for the purpose of providing prearranged *delivery services* for compensation. A *delivery network platform* does not include a *transportation network platform*.

2.  *"Delivery services"* includes courier services.

3.  *"Occupying"* means in, upon, getting in, on, out or off.

4.  *"Transportation network platform"* means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

EXCLUSION OF TERRORISM

CA-2384F(10-13)

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is shown in italics:

1. *"Terrorism"* means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

   b. When one or both of the following apply:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. *"Any injury, damage, loss or expense"* means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to *bodily injury, property damage, personal injury, personal and advertising injury, loss,* loss of use, rental reimbursement after *loss* or *covered pollution cost or expense,* as may be defined under this Coverage Form, Policy or any applicable endorsement.

B. Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage or Garagekeepers Coverage - Customers' Sound Receiving Equipment, the

following exclusion is added:

Exclusion Of Terrorism

We will not pay for *any injury, damage, loss or expense* caused directly or indirectly by *terrorism,* including action in hindering or defending against an actual or expected incident of *terrorism. Any injury, damage, loss or expense* is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. But this exclusion applies only when one or more of the following are attributed to an incident of *terrorism:*

1. The *terrorism* is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the *terrorism* was to release such material; or

3. The *terrorism* is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the *terrorism* was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the *terrorism* and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of *terrorism* which occur within a 72-hour period and appear to be carried

out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs B5 and B6 are exceeded.

With respect to this exclusion, Paragraphs B5 and B6 describe the thresholds used to measure the magnitude of an incident of *terrorism* and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of *terrorism*, there is no coverage under this Coverage Form, Policy or any applicable endorsement.

C. With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage or Garagekeepers Coverage - Customers' Sound Receiving Equipment, the following exclusion is added:

Exclusion Of Terrorism

We will not pay for any *loss*, loss of use or rental reimbursement after *loss* caused directly or indirectly by *terrorism*, including action in hindering or defending against an actual or expected incident of *terrorism*. But this exclusion applies only when one or more of the following are attributed to an incident of *terrorism*:

1. The *terrorism* is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the *terrorism* was to release such material; or

3. The *terrorism* is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the *terrorism* was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the *terrorism* and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of *terrorism* which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph C5 is exceeded.

With respect to this exclusion, Paragraph C5 describes the threshold used to measure the magnitude of an incident of *terrorism* and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of *terrorism*, there is no coverage under this Coverage Form, Policy or any applicable endorsement.

D. In the event of any incident of *terrorism* that is not subject to the exclusion in Paragraph B or C, coverage does not apply to *any injury, damage, loss or expense* that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

NEW MEXICO UNINSURED MOTORISTS COVERAGE - NONSTACKED                    CA-3129R(11-11)

For a covered *auto* licensed or principally garaged in, or *garage operations* conducted in, New Mexico, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by this endorsement.

A. Coverage

1. We will pay all sums the *insured* is legally entitled to recover as damages from the owner or driver of an *uninsured motor vehicle* because of:

   a. *Bodily injury* sustained by an *insured* and caused by an *accident*; or

   b. *Property damage* caused by an *accident*.

   The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the *uninsured motor vehicle*.

2. With respect to damages resulting from an *accident* with a vehicle described in paragraph b of the definition of *uninsured motor vehicle*, we will pay under this coverage only if paragraph a or b below applies:

   a. The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an *insured* and the insurer of a vehicle described in paragraph b of the definition of *uninsured motor vehicle* and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the *insured* in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a *suit* brought without our written consent is not binding on us.

B. Who Is an Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are *insureds*:

   a. The Named Insured and any *family members*.

   b. Anyone else *occupying* a covered *auto* or a temporary substitute for a covered *auto*. The covered *auto* must be out of service because of its breakdown, repair, servicing, *loss* or destruction.

   c. Anyone for damages he or she is entitled to recover because of *bodily injury* sustained by another *insured*.

2. A partnership, limited liability company, corporation or any other form of organization, then the following are *insureds*:

   a. Anyone *occupying* a covered *auto* or a temporary substitute for a covered *auto*. The covered *auto* must be out of service because of its breakdown, repair, servicing, *loss* or destruction.

   b. Anyone for damages he or she is entitled to recover because of *bodily injury* sustained by another *insured*.

   c. The Named Insured for *property damage* only.

C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent, if the settlement prejudices our right to recover payment. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in paragraph b of the definition of *uninsured motor vehicle*, in accordance with the procedure described in paragraph A2b.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. The direct or indirect benefit of any insurer of property.

4. The first $250 of the amount of *property damage* to the property of each *insured* as the result of any one *accident*.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

6. *Property damage* for which the *insured* has been or is entitled to be compensated by other property or physical damage insurance.

7. *Bodily injury* or *property damage* arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other au-

thority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

D. Limit of Insurance

1. Regardless of the number of covered *autos*, *insureds*, premiums paid, claims made or vehicles involved in the *accident*, the most we will pay for all damages resulting from any one *accident* is the limit of Uninsured Motorists Coverage shown in the Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of *loss* under this coverage and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of *loss* for which payment has been made by or for anyone who is legally responsible.

3. With respect to damages resulting from an *accident* involving an underinsured motor vehicle, as described in paragraph b of the *uninsured motor vehicle* definition, the Limit of Insurance shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under this coverage form's Liability Coverage.

4. We will not pay for a *loss* which is paid or payable under Physical Damage Coverage.

E. Changes in Conditions

The conditions are changed for Uninsured Motorists Coverage as follows:

1. The first paragraph of the Other Insurance General Condition in the Business Auto Coverage Form is replaced by the following:

   (1) For any covered *auto* you own which is described in Item Three of the Declarations, other than a *trailer*, this coverage form provides primary insurance. For a covered *auto* you own which is described in Item Three of the Declarations as a *trailer*, while connected to another vehicle, coverage provided to the *trailer* is:

   (a) Primary while it is connected to a covered *auto* you own which is described in Item Three of the Declarations.

   (b) Excess while it is connected to a covered *auto* you own which is not described in Item Three of the Declarations.

   (c) Excess while it is connected to a motor vehicle you do not own.

   (2) For any covered *auto* you own which is not described in Item Three of the Declarations, the insurance provided by this coverage form is excess over any other collectible insurance.

   (3) For any covered *auto* you do not own, the insurance provided by this coverage form is excess over any other collectible insurance.

2. Paragraph e of the Other Insurance - Primary and Excess Insurance Provisions General Condition in the Truckers and Motor Carrier Coverage Forms is replaced by the following:

   Except as provided in paragraphs a, b, c and d above:

   (1) For any covered *auto* you own which is described in Item Three of the Declarations, this coverage form provides primary insurance.

   (2) For any covered *auto* you own which is not described in Item Three of the Declarations, the insurance provided by this coverage form is excess over any other collectible insurance.

   (3) For any covered *auto* you do not own, the insurance provided by this coverage form is excess over any other collectible insurance.

3. Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary and Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms are changed by the addition of the following:

   a. The reference to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

   b. Any insurance we provide with respect to a vehicle owned by the Named Insured or, if the Named Insured is an individual, any *family member*, that is not a covered *auto* for Uninsured Motorists Coverage under this coverage form, shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

4. Duties in the Event of Accident, Claim, Suit or Loss is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and



b. Promptly send us copies of the legal papers if a *suit* is brought.

c. A person seeking coverage from an insurer, owner or operator of a vehicle described in paragraph b of the definition of *uninsured motor vehicle* must also notify us in writing of a tentative settlement between the *insured* and the insurer and allow us to advance payment to that *insured* in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

5. Transfer of Rights of Recovery Against Others to Us is changed by adding the following:

If we make any payment and the *insured* recovers from another party, the *insured* shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to damages caused by an *accident* with a vehicle described in paragraph b of the definition of *uninsured motor vehicle* if we:

a. Have been given prompt written notice of a tentative settlement between an *insured* and the insurer of a vehicle described in paragraph b of the definition of *uninsured motor vehicle*; and

b. Fail to advance payment to the *insured* in an amount equal to the tentative settlement within 30 days after the receipt of notification.

If we advance payment to the *insured* in an amount equal to the tentative settlement within 30 days after the receipt of notification:

a. That payment will be separate from any amount the *insured* is entitled to recover under the provisions of Uninsured Motorists Coverage; and

b. We also have a right to recover the advance payment.

6. The following condition is added:

Arbitration

a. If we and an *insured* disagree whether the *insured* is legally entitled to recover damages from the owner or driver of an *uninsured motor vehicle*, or do not agree as to the amount of damages that are recoverable by that *insured*, then the matter may be arbitrated. However, disputes concerning whether there is coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each

party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally, unless the arbitration costs are awarded to the prevailing party by the arbitrators.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the *insured* lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

7. Two or More Coverage Forms or Policies Issued by Us in the Business Auto Coverage Form, Garage Coverage Form and Truckers Coverage Form does not apply.

F. Additional Definitions

As used in this endorsement:

1. *"Family member"* means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. *"Occupying"* means in, upon, getting in, on, out or off.

3. *"Property damage"* means injury or destruction of:

a. A covered *auto*; or

b. Property owned by:

(1) The Named Insured; or

(2) Any *family member*, if the Named Insured is an individual; or

c. Property contained in the covered *auto* and owned by anyone else *occupying* the covered *auto*.

4. *"Uninsured motor vehicle"* means a land motor vehicle or *trailer*:

a. For which no liability bond or policy at the time of an *accident* provides at least the amounts required by the applicable law where a covered *auto* is principally garaged;

b. That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or *trailer* for which the sum of all liability bonds or policies at the time of an *accident* provides at least the amounts required by the applicable law where a covered *auto* is principally garaged, but their limits are less than the sum of the limits of this coverage applicable to the *insured*.



c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d. That is a hit-and-run vehicle and neither the driver nor owner can be identified.

The vehicle must either:

(1) Hit an *insured*, a covered *auto* or a vehicle an *insured* is *occupying*; or

(2) Cause *bodily injury* or *property damage* with no physical contact with an *insured*, a covered *auto* or a vehicle the *insured* is *occupying*

at the time of an *accident*.

However, *uninsured motor vehicle* does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except as a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law; or

b. Designated for use mainly off public roads while not on public roads.

28

POLICY NUMBER: ZB0824

LOSS PAYABLE CLAUSE

CA-7027(12-93)

This endorsement modifies insurance provided under the following:
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

1. We will pay, as interest may appear, you and the loss payee named in the Schedule for *loss* to a covered *auto*.

2. The insurance covers the interest of the loss payee unless the *loss* results from conversion, secretion or embezzlement on your part.

3. CANCELLATION

a. If we cancel the policy for any reason other than nonpayment of premium, we will mail notice to the loss payee in accordance with the Cancellation Common Policy Condition.

b. If the policy is cancelled due to nonpayment of premium, we will mail to the loss payee, a copy of the policy lapse notice we send the insured.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. Cancellation ends this agreement.

4. If we make any payment to the loss payee, we will obtain their rights against any other party.

SCHEDULE

First Named Insured and Address:

REMOVAL SOLUTIONS LLC
4115 RANCHO ENCANTO RD NW
ALBUQUERQUE NM 87120

Loss Payee (Name and Address)

AMUR EQUIPMENT FINANCE INC &
ISAOA
308 N LOCUST ST STE 100
GRAND ISLAND NE 68801

Company Name and Address:

Acuity, A Mutual Insurance Company
2800 South Taylor Drive
PO Box 58
Sheboygan, WI 53082-0058

Agency Name and Number:

HUB INTERNATIONAL SERVICES INC
7913-EM

Policy Number:        ZB0824

Policy Period:        Effective Date:        08-31-20

                      Expiration Date:       08-31-21

| Unit Number | Model Year | Description of Applicable Vehicles Vehicle Description | ID Number |
|---|---|---|---|
| 0003 | 2017 | ISUZU NPR HD | 54DC4W1B9HS806158 |

| Unit Number | Physical Damage Deductibles Comprehensive | Specified Causes of Loss | Collision |
|---|---|---|---|
| 0003 | $1,000 | | $1,000 |



SPLIT LIMITS OF INSURANCE – BUSINESS AUTO, MOTOR CARRIER AND TRUCKERS
CA-7176(12-93)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

MOTOR CARRIER COVERAGE FORM

TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The Liability Coverage Limit of Insurance is replaced by the following:

LIMIT OF INSURANCE

1. Regardless of the number of covered *autos*, *insureds*, premiums paid, claims made or vehicles involved in the *accident*, the Limits of Insurance are as follows:

a. The most we will pay for the total of all damages and *covered pollution cost or expense* combined, resulting from *bodily injury* to any one person caused by any one *accident*, including all damages claimed by any one person or organization for care, loss of services or death resulting from the *bodily injury*, is the *Bodily Injury* Each Person Limit of Insurance shown in the Declarations.

b. Subject to the each person limit in a above, the most we will pay for the total of all damages and *covered pollution cost or expense* combined, resulting from *bodily injury* caused by any one *accident* is the *Bodily Injury* Each *Accident* Limit of Insurance shown in the Declarations.

c. The most we will pay for the total of all damages and *covered pollution cost or expense* combined, resulting from *property damage* caused by any one *accident* is the *Property Damage* Each *Accident* Limit of Insurance shown in the Declarations.

2. All *bodily injury*, *property damage* and *covered pollution cost or expense* resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one *accident*.

ADDITIONAL INSURED - AUTOMATIC STATUS WHEN REQUIRED IN          CA-7214(10-98)
WRITTEN AGREEMENT WITH YOU - PRIMARY

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

GARAGE COVERAGE FORM

MOTOR CARRIER COVERAGE FORM

1. Who Is an Insured under Section II - Liability Coverage is amended to include any person or organization with whom you have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such persons or organizations are additional insureds only with respect to liability arising out of operations performed for the additional insured by you.

2. The coverage provided by this endorsement will be primary and noncontributory with respect to any other coverage available to the additional insured.

3. The Limits of Insurance applicable to the additional insured are those specified in the written con- tract or agreement or in the Declarations for this Coverage Form, whichever is less. These Limits of Insurance are inclusive and not in addition to the Limits of Insurance shown in the Declarations.

ACUITY ADVANTAGES - BUSINESS AUTO                      CA-7246(11-15)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

1. Newly Acquired Organizations

   The following is added to paragraph A1, Who Is an Insured of Section II - Liability Coverage:

   Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. This coverage does not apply to bodily injury or property damage that occurred before you acquired or formed the organization;

   c. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

2. Increased Supplementary Payments

   a. The limit shown in paragraph A2a(2) of Section II - Liability Coverage is increased to $2,500.

   b. The limit shown in paragraph A2a(4) of Section II - Liability Coverage is increased to $300.

3. Towing for Covered Autos after Covered Losses

   The following is added to paragraph A4 Coverage Extensions of Section III - Physical Damage Coverage in the Business Auto Coverage Form and to paragraph - A4 Coverage Extension under Section IV - Physical Damage Coverage in the Motor Carrier Coverage Form and the Towing Coverage endorsement, if it applies to your policy:

   If a covered *loss* to a covered *auto* renders the vehicle undriveable, we will pay for reasonable and necessary costs to tow the vehicle to the nearest service or salvage facility. This coverage only applies to a covered *auto* insured for Comprehensive or Collision coverage. Such payments will not reduce the limits of insurance described in C Limit of Insurance.

4. Coverage Extensions

   The following are added to paragraph A4, Coverage Extensions of Section III - Physical Damage Coverage in the Business Auto Coverage Form and to paragraph A4, Coverage Exten-

sions under Section IV - Physical Damage Coverage in the Motor Carrier Coverage Form:

   a. Fuel in Vehicle Coverage

      We will also pay, with respect to a covered *loss*, the actual loss sustained for the *loss* to the fuel used to operate your vehicle but only with respect to a covered *auto*. You must provide documentation supporting your claim for damages.

      Deductible

      A deductible applies to this coverage. Refer to paragraph 5 Deductible Applicable to Fuel in Vehicle, Miscellaneous Equipment Used With Covered Vehicle, and Electronic Logging Devices or Electronic On-Board Recorders for further information.

   b. Miscellaneous Equipment Used With Covered Vehicle Coverage

      We will also pay, with respect to a covered *loss*, the actual cash value, repair cost or replacement cost, whichever is less, for *loss* to your miscellaneous equipment but only with respect to a covered *auto*. Miscellaneous equipment means hand trucks, dollies, pallets, pads, covers, binders, tarps, tie-downs, chains and other similar equipment used in the handling of property being transported.

      Deductible

      A deductible applies to this coverage. Refer to paragraph 5 Deductible Applicable to Fuel in Vehicle, Miscellaneous Equipment Used With Covered Vehicle, and Electronic Logging Devices or Electronic On-Board Recorders for further information.

   c. Electronic Logging Devices or Electronic On-Board Recorders

      We will also pay, with respect to a covered *loss*, up to $3,000 for the actual loss sustained to an electronic on-board recorder or electronic logging device permanently installed in the *auto* but only with respect to a covered *auto*.

      Deductible

      A deductible applies to this coverage. Refer to paragraph 5 Deductible Applicable to Fuel in Vehicle, Miscellaneous Equipment Used with Covered Vehicle, and Electronic Logging Devices or Electronic On-Board Recorders for further information.

5. Deductible Applicable to Fuel in Vehicle, Miscellaneous Equipment Used With Covered Vehicle, and Electronic Logging Devices or Electronic On-Board Recorders

   a. If *loss* to property covered by these coverages is the result of a *loss* to the covered

32

*auto* under this Coverage Form's Comprehensive or Collision Coverage, then for each covered *auto* our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to *loss* to property covered by an extension caused by fire or lightning.

b. If *loss* to property covered by these coverages is the result of a *loss* to the covered *auto* under this Coverage Form's Specified Causes of Loss Coverage, then for each covered *auto* our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by a $100 deductible.

c. In the event that there is more than one applicable deductible, only the highest deductible will apply. In no event will more than one deductible apply.

6. Deductible Waiver

The following is added to paragraph D of Section III - Physical Damage Coverage in the Business Auto Coverage Form and to paragraph D of Section IV - Physical Damage Coverage in the Motor Carrier Coverage Form:

If the insured chooses to have a damaged windshield or other glass repaired, no deductible will apply to the loss.

7. Knowledge of an Occurrence

The following is added to paragraph A2, Duties in the Event of Accident, Claim, Suit or Loss of Section IV - Business Auto Conditions in the Business Auto Coverage Form and to paragraph A2, Duties in the Event of an Accident, Claim, Suit or Loss of Section V - Motor Carrier Conditions in the Motor Carrier Coverage Form:

Knowledge of an *accident*, claim, *suit*, or *loss* by an agent or *employee* of any insured shall not in itself constitute knowledge of the insured unless your partners, executive officers, directors, managers, members or a person who has been designated by them to receive reports of *accidents*, claims, *suits* or *loss* shall have received such notice from the agent or *employee*.

AUTO MEDICAL PAYMENTS COVERAGE

CA-9903F(3-06)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

1. COVERAGE

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an *insured* who sustains *bodily injury* caused by an *accident*. We will pay only those expenses incurred within three years from the date of the *accident*.

2. WHO IS AN INSURED

a. You while *occupying* or, while a pedestrian, when struck by any *auto*.

b. If you are an individual, any *family member* while *occupying* any *auto* or, while a pedestrian, when struck by any *auto*.

c. Anyone else *occupying* a covered *auto* or a temporary substitute for a covered *auto*. The covered *auto* must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. EXCLUSIONS

This insurance does not apply to any of the following:

a. *Bodily injury* sustained by an *insured* while *occupying* a vehicle located for use as a premises.

b. *Bodily injury* sustained by you or any *family member* while *occupying* or struck by any vehicle (other than a covered *auto*) owned by you or furnished or available for your regular use.

c. *Bodily injury* sustained by any *family member* while *occupying* or struck by any vehicle (other than a covered *auto*) owned by or furnished or available for the regular use of any *family member*.

d. *Bodily injury* to your *employee* arising out of and in the course of employment by you. However we will cover *bodily injury* to your domestic *employees* if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic *employee* is a person engaged in household or domestic work performed principally in connection with a residence premises.

e. *Bodily injury* to an *insured* while working in a business of selling, servicing, repairing or

parking *autos* unless that business is yours.

f. *Bodily injury* arising directly or indirectly out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. *Bodily injury* to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

h. *Bodily injury* sustained by an *insured* while *occupying* any covered *auto* while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any *bodily injury* sustained by an *insured* while the *auto* is being prepared for such a contest or activity.

4. LIMIT OF INSURANCE

Regardless of the number of covered *autos*, *insureds*, premiums paid, claims made or vehicles involved in the *accident*, the most we will pay for *bodily injury* for each *insured* injured in any one *accident* is the Limit of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of *loss* under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

5. CHANGES IN CONDITIONS

The Conditions are changed for Auto Medical Payments Coverage as follows:

a. The Transfer of Rights of Recovery Against Others to Us Condition does not apply.

b. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary and Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

6. ADDITIONAL DEFINITIONS

As used in this endorsement:



a. *"Family member"* means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

b. *"Occupying"* means in, upon, getting in, on, out or off.

3s

COMMON POLICY CONDITIONS

IL-0017F(11-98)

All Coverage Parts included in this policy are subject to the following conditions.

A. CANCELLATION

1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

a. Ten days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. Thirty days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The First Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. INSPECTIONS AND SURVEYS

1. We have the right to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1 and 2 of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2 of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

E. PREMIUMS

The First Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

36

NUCLEAR ENERGY LIABILITY EXCLUSION - BROAD FORM                    IL-0021F(3-14)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTO COVERAGE PART

COMMERCIAL GENERAL LIABILITY COVERAGE PART

DIRECTORS' AND OFFICERS' LIABILITY COVERAGE PART

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

ERRORS AND OMISSIONS COVERAGE PART

FARM COVERAGE PART

LIQUOR LIABILITY COVERAGE FORM

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

POLLUTION LIABILITY COVERAGE FORM

PRODUCT WITHDRAWAL COVERAGE PART

PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

1. The insurance does not apply:

 a. Under any Liability Coverage to *bodily injury* or *property damage:*

   (1) With respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the *hazardous properties* of *nuclear material* and with respect to which:

     (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any law amendatory thereof; or

     (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

 b. Under any Medical Payments coverage, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

 c. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material*, if:

   (1) The *nuclear material:*

     (a) Is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured;* or

     (b) Has been discharged or dispersed therefrom.

   (2) The *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured;* or

   (3) The *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear facility*, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

2. As used in this endorsement:

 a. *"Hazardous properties"* include radioactive, toxic or explosive properties.

 b. *"Nuclear material"* means *source material, special nuclear material* or *byproduct material.*

 c. *"Source material," "special nuclear material"* and *"byproduct material"* have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

 d. *"Spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor.*

 e. *"Waste"* means any waste material:

   (1) Containing *byproducts material* other than the tailings or *wastes* produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its *source material* content; and

   (2) Resulting from the operation by any person or organization of any *nuclear facility* included under the first two paragraphs of the definition of *nuclear facility.*

 f. *"Nuclear facility"* means:

   (1) Any *nuclear reactor;*

   (2) Any equipment or device designed or used for:

     (a) Separating the isotopes of uranium or plutonium;

     (b) Processing or utilizing *spent fuel;* or

(c) Handling, processing or packaging *waste.*

(3) Any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) Any structure, basin, excavation, prem-ises or place prepared or used for the storage or disposal of *waste;*

and includes the site on which any of the foregoing is located, all operations conduct-ed on such site and all premises used for such operations.

g. *"Nuclear reactor"* means any apparatus de-signed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. *"Property damage"* includes all forms of ra-dioactive contamination of property.

38

NEW MEXICO CHANGES - PROPERTY CLAIMS SETTLEMENT
IN THE EVENT OF A CATASTROPHE

IL-0178F(9-07)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTO COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART

A. The provisions of this endorsement apply to a claim for direct physical loss or damage to Covered Property, provided that:

    1. The claim is for loss or damage that results from a catastrophe declared by the Superintendent of Insurance; and

    2. The catastrophic event is a Covered Cause of Loss.

B. The word loss, as used in this endorsement, includes *loss* as defined in certain coverage forms.

C. The following provisions, C1 and C2 are added to the policy and supersede any provisions to the contrary:

    1. If you reported your claim to us:

      a. Before the catastrophe was declared, we will reach agreement with you on the amount of loss within 90 days after the date the catastrophe was declared;

      b. After the catastrophe was declared, we will reach agreement with you on the amount of loss within 90 days after the date on which you reported the claim.

    2. However, the time periods specified in C1 above will be extended by the period of time taken to resolve the following situations:

      a. We suspect the claim is fraudulent and commence an investigation to make such a determination;

      b. You do not provide the necessary information regarding the nature of the claim, following our request for such information; or

      c. You filed suit against us in connection with the claim before expiration of the applicable 90-day period.

D. All other provisions of this policy continue to apply in the event of a catastrophe, including the Suit Against Us and Appraisal conditions.

E. This endorsement does not invalidate our right to deny your claim, nor the right of either party to seek judgment in a court having jurisdiction.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

39

ASBESTOS EXCLUSION

IL-7012(3-14)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSE COVERAGE FORM

COMMERCIAL AUTO COVERAGE PART

COMMERCIAL GENERAL LIABILITY COVERAGE PART

DIRECTORS' AND OFFICERS' LIABILITY COVERAGE PART

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

ERRORS AND OMISSIONS COVERAGE PART

GARAGE COVERAGE FORM

LIQUOR LIABILITY COVERAGE FORM

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

POLLUTION LIABILITY COVERAGE FORM

PRODUCT WITHDRAWAL COVERAGE PART

PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

The following exclusion is added:

Asbestos

This insurance does not apply to any *bodily injury* or *property damage* arising out of activities related to, but not limited to, manufacture, mining, storage, distribution, installation, sale, use, exposure to, service, testing for, repair, containment or removal of asbestos, asbestos fibers, asbestos dust, or products containing asbestos.

